| | |
|---|---|
| 1 | BINGHAM MCCUTCHEN LLP |
|   | CHRISTOPHER B. HOCKETT (SBN 121539) |
| 2 | ADRIENNE L. TACLAS (SBN 211232) |
|   | Three Embarcadero Center |
| 3 | San Francisco, CA 94111-4067 |
|   | Telephone: 415.393.2000 |
| 4 | Facsimile: 415.393.2286 |
| 5 | BINGHAM MCCUTCHEN LLP |
|   | MARY T. HUSER (SBN 136051) |
| 6 | SUSAN VASTANO VAUGHAN (SBN 223576) |
|   | 1900 University Avenue |
| 7 | East Palo Alto, CA 94303-2223 |
|   | Telephone: (650) 849-4400 |
| 8 | Facsimile: (650) 849-4800 |
| 9 | PAUL, HASTINGS, JANOFSKY & WALKER LLP |
|   | STEPHEN S. KORNICZKY (SBN 135532) |
| 10 | S. CHRISTIAN PLATT (SBN 199318) |
|    | 3579 Valley Center Drive |
| 11 | San Diego, CA 92130 |
|    | Telephone: 858.720.2500 |
| 12 | Facsimile: 858.720.2555 |

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| ICU MEDICAL, INC., | No. CV 01-3202 CRB (MEJ) |
| Plaintiff, | DECLARATION OF MICHAEL SOFOCLEOUS IN SUPPORT OF ICU MEDICAL, INC.'S REPLY FOR SUMMARY JUDGMENT ON B. BRAUN MEDICAL, INC.'S INEQUITABLE CONDUCT DEFENSE |
| v. | |
| B. BRAUN MEDICAL, INC., a Pennsylvania corporation, | |
| Defendant. | |
| | Date: February 11, 2005 |
| | Time: 10:00 a.m. |
| | Place: Courtroom 8, 19th Floor |
| | Judge: The Hon. Charles R. Breyer |

Case No. CV 01-3202 CRB (MEJ)

DECLARATION OF MICHAEL SOFOCLEOUS IN SUPPORT OF ICU MEDICAL, INC.'S REPLY FOR
SUMMARY JUDGMENT ON B. BRAUN MEDICAL, INC.'S INEQUITABLE CONDUCT DEFENSE

PA/52150817.1

I, Michael Sofocleous, declare:

1. I submit this declaration in support of ICU Medical, Inc.'s Reply in Support of its Motion for Summary Judgment on B. Braun Medical, Inc.'s Inequitable Conduct Defense. Unless stated otherwise, the following statements are based upon my own personal knowledge, and if called as a witness, I could and would competently testify thereto.

2. I graduated in 1965 with a B.S. in Chemistry from Rensselaer Polytechnic Institute and graduated in 1973 with a J.D. degree from The National Law Center, George Washington University. I was admitted to the Bar of the Commonwealth of Virginia in 1974 and became registered to practice before the United States Patent and Trademark Office ("PTO") in 1999, upon my retirement from the PTO. I am currently a sole practitioner in Fairfax, VA. During my employment as a patent attorney from July 1999 to the present, I have been involved in a variety of patent matters, including rendering validity and infringement opinions, serving as a consultant on patent interferences, serving as an expert witness, prosecuting interferences as lead counsel, and drafting and prosecuting patent applications.

3. From February 1966 until June 1975, I was employed in the PTO as an examiner (except for a 3 year break for military service). I was promoted to Primary Examiner in 1974. From June 1975, until February 1985, I served as an Interlocutory Examiner at the Board of Patent Interferences. From about September 1976, until February 1985, I also served as an acting member of the Board.

4. In October 1985, I was promoted to the position of Examiner-in-Chief (now, Administrative Patent Judge) of the Board of the Board of Patent Appeals and Interferences. Regarding interferences, my responsibilities included determining priority of inventions and patentability of inventions. In deciding issues of patentability raised in interferences, I considered those issues normally raised in an appeal from an adverse decision of an examiner upon an application for patent, including the issues of written description, indefiniteness, anticipation, obviousness and double patenting. In addition, I considered issues

1  Case No. CV 01-3202 CRB (MEJ)

DECLARATION OF MICHAEL SOFOCLEOUS IN SUPPORT OF ICU MEDICAL, INC.'S REPLY FOR SUMMARY JUDGMENT ON B. BRAUN MEDICAL, INC.'S INEQUITABLE CONDUCT DEFENSE

PA/52150817.1

1    of inequitable conduct.

2         5.   During my tenure as a Board member, I authored decisions in
3    approximately 120 appeals from an adverse decision of an examiner upon an application for
4    patent, and I sat as a member of the three judge panel on approximately 240 appeals from an
5    adverse decision of an examiner upon an application for patent. I also authored approximately
6    120 final decisions in interference cases, and sat as a member of the three-member Final
7    Hearing panel on approximately 240 interference cases. I have had published several articles
8    on interference statistics and have lectured several times on the issues related to interference
9    practice.

10        6.   In sum, I have over thirty years of experience with PTO practices and
11   procedures and the laws and regulations of the United States that govern patentability
12   determinations. During my tenure with the PTO, I regularly reviewed patent applications to
13   determine whether the applications complied with each of the requirements of the patent laws,
14   including 35.U.S.C. §§ 102, 103, and 112 and, in particular, novelty, obviousness, written
15   description, indefiniteness, and enablement requirements. I also became very familiar with
16   PTO rules and procedures associated with the examination of applications for patent,
17   applications for reissue of patents, reexamination of patents, interferences, and appeals.

18        7.   My additional qualifications, including a list of the cases I testified by
19   deposition or at trial within the preceding 4 years and a list of my PTO published decisions and
20   publications that I have authored, are summarized in my curriculum vitae, a true and accurate
21   copy of which is attached as Exhibit A.

22        8.   In preparing this Declaration, I have reviewed the Rule 26(a) Report of
23   James T. Carmichael, Esq. which I am informed was attached as Exhibit A to the Declaration
24   of James T. Carmichael in support of Braun's Opposition to ICU's Motion for Summary
25   Judgment of No Inequitable Conduct.

26        9.   Individuals who are substantively involved with the preparation and

2                                                                 Case No. CV 01-3202 CRB (MEJ)

DECLARATION OF MICHAEL SOFOCLEOUS IN SUPPORT OF ICU MEDICAL, INC.'S REPLY FOR
SUMMARY JUDGMENT ON B. BRAUN MEDICAL, INC.'S INEQUITABLE CONDUCT DEFENSE

PA/52150817.1

1  prosecution of a patent application before the U.S. Patent and Trademark Office (PTO) have a
2  duty of candor and good faith in the conduct of proceedings before the PTO.  This duty is
3  stated in Rule 56 of the PTO's Rules of Practice (37 C.F.R. § 1.56) and has been interpreted in
4  a body of Federal Circuit case law.  See, e.g*.,* *FMC Corp. v. Manitowoc Co., Inc.*, 835 F.2d
5  1411, 1415 (Fed. Cir. 1987).  Three groups of individuals have this duty, as defined in 37
6  C.F.R. § 1.56(c):

7   (1) Each inventor named in the application;

8   (2) Each attorney or agent who prepares or prosecutes the application; and

9   (3) Every other person who is substantively involved in the preparation or
10  prosecution of the application and who is associated with the inventor, with the assignee or with
11  anyone to whom there is an obligation to assign the application.

12  The duty of candor and good faith includes the duty to disclose known material
13  prior art and information, whether found by search or known through other means, by anyone
14  who has a duty toward the PTO.

15  10.   Until March 16, 1992, information was considered "material" under Rule
16  56 where there was a substantial likelihood that a reasonable examiner would consider the
17  information important in deciding whether the patent application should issue as a patent.  The
18  PTO first adopted this definition of materiality in January of 1977 because it was consistent
19  with existing PTO policy on fraud and inequitable conduct and also consistent with the
20  standards applied by Federal courts.  Effective March 16, 1992, the Rule 56 definition of
21  material information was changed, principally to clarify the information that the PTO
22  considered to be material to the patent examination process.  Under the new regulations,
23  information was considered to be material when it was not cumulative to information already
24  of record in the application and it established, either by itself or in combination with other
25  information, a prima facie case of unpatentability of the claim, or either refuted or was
26  inconsistent with a position taken by the applicant in arguing for the patentability of a claim.

3                                                Case No. CV 01-3202 CRB (MEJ)

DECLARATION OF MICHAEL SOFOCLEOUS IN SUPPORT OF ICU MEDICAL, INC.'S REPLY FOR SUMMARY JUDGMENT ON B. BRAUN MEDICAL, INC.'S INEQUITABLE CONDUCT DEFENSE

PA/52150817.1

37 C.F.R. § 1.56(b).

11. Proceedings in the PTO are governed by the Manual of Patent Examining Procedure[1] (MPEP). In this regard, the "Forward" to the MPEP is instructive and reads, in part, as follows:

> This Manual is published to provide U.S. Patent and Trademark Office (USPTO) patent examiners, applicants, attorneys, agents, and representatives of applicants with a reference work on the practices and procedures relative to the prosecution of patent applications before the USPTO. It contains instructions to examiners, as well as other material in the nature of information and interpretation, and outlines the current procedures which the examiners are required or authorized to follow in appropriate cases in the normal examination of a patent application.

As it clearly states, the MPEP is published to provide patent examiners and applicants with a reference work on the practices and procedures relative to prosecution and contains material in the nature of information and interpretation and outlines the current procedures which the examiners are required or authorized to follow.

12. The MPEP contains Chapter 2000 which discusses the Duty of Disclosure under 37 C.F.R. § 1.56. Section 1.56(a) was "clarified to indicate that the duty of an individual to disclose information is based on the knowledge *of that individual* that the information is material to patentability." 57 Fed. Reg. 2022 (January 17, 1992) (emphasis added). I also note that, as the PTO indicated in the rulemaking associated with the revised Rule 56, the 1992 rule change was not viewed as a substantive change in the standard. See the (MPEP) § 2001.04 (page 2000-3), which reads, in part, as follows:

> The amendment to 37 CFR 1.56 was proposed to address criticism concerning a perceived lack of certainty in the materiality standard. The rule as promulgated will provide greater clarity and hopefully minimize the burden of litigation on the

---

[1] In this report I refer to the latest version of the MPEP (8th Edition, Revision 2, dated May 2004), which contains substantially the provisions in effect during the prosecution of the '673 patent.

DECLARATION OF MICHAEL SOFOCLEOUS IN SUPPORT OF ICU MEDICAL, INC.'S REPLY FOR SUMMARY JUDGMENT ON B. BRAUN MEDICAL, INC.'S INEQUITABLE CONDUCT DEFENSE

PA/52150817.1

question of inequitable conduct before the Office, while providing the Office with the information necessary for effective and efficient examination of patent applications. 37 CFR 1.56 has been amended to present a clearer and more objective definition of what information the Office considers material to patentability. The rules do not define fraud or inequitable conduct which have elements both of materiality and of intent.

The definition of materiality in 37 CFR 1.56 does not impose substantial new burdens on applicants, but is intended to provide the Office with the information it needs to make a proper and independent determination on patentability. It is the patent examiner who shall make the determination after considering the facts involved in the particular case.

13. Violations of a duty of candor and good faith may constitute inequitable conduct that would render a patent unenforceable. Where material information is not timely brought to the attention of the PTO, inequitable conduct may be found by a court if each of the following elements is established by clear and convincing evidence:

(1) the information is material;

(2) there was actual knowledge, chargeable to a person with a duty of disclosure, of the information;

(3) there was actual knowledge, chargeable to a person with a duty of disclosure, of the materiality of the information;

(4) there was a failure to timely disclose the information to the PTO, and

(5) the failure to disclose the information resulted from an intent to deceive the PTO.

See generally *FMC Corp.*, *supra.*

14. To hold a patent unenforceable due to inequitable conduct, a court must make a determination that the evidence meets a threshold level of materiality and that the evidence establishes an intent to deceive the PTO. If both materiality and intent are found, the court is then to determine if the sanction of unenforceability is to be applied after balancing the evidence of materiality and intent. Both elements, however, must be proven by clear and convincing evidence.

15. Inequitable conduct includes affirmative misrepresentations of a material

DECLARATION OF MICHAEL SOFOCLEOUS IN SUPPORT OF ICU MEDICAL, INC.'S REPLY FOR SUMMARY JUDGMENT ON B. BRAUN MEDICAL, INC.'S INEQUITABLE CONDUCT DEFENSE

PA/52150817.1

fact, failure to disclose material information known to a party, or submission of false material information, coupled with an intent to deceive. See, e.g., *Gambro Lundia AB v. Baxter Healthcare Corp.*, 110 F.3d 1573, 1580 (Fed. Cir. 1997).

16. Individuals associated with the filing or prosecution of patent application are presumed to have discharged their duty of disclosure once a patent is granted. Each applicant is required by 37 C.F.R. § 1.63 to acknowledge his or her duty of disclosure in the oath attached to the application. A failure to bring to the attention of the PTO information that was material to the examination process through mere negligence would not establish inequitable conduct in the absence of clear and convincing evidence that the failure to disclose the information arose from an intent to deceive the PTO. An intent to deceive may be inferred where a patent applicant knew, or should have known, that withheld information would be material to the PTO's consideration of the patent application.

17. MPEP § 2001.04, page 2000-3 sets forth the type of information which is material to patentability within the meaning of 37 CFR § 1.56. In particular, the MPEP states as follows:

> The term "information" as used in 37 CFR 1.56 means all of the kinds of information required to be disclosed and includes any information which is "material to patentability." Materiality is defined in 37 CFR 1.56(b) and discussed herein at MPEP § 2001.05. In addition to prior art such as patents and publications, 37 CFR 1.56 includes, for example, information on >enablement,< possible prior public uses, sales, offers to sell, derived knowledge, prior invention by another, inventorship conflicts, and the like. > "Materiality is not limited to prior art but embraces *any* information that a reasonable examiner would be substantially likely to consider important in deciding whether to allow an application to issue as a patent." *Bristol-Myers Squibb Co. v. Rhone-Poulenc Rorer, Inc.*, 326 F.3d 1226, 1234, 66 USPQ2d 1481, 1486 (Fed. Cir. 2003) (emphasis in original) (finding article which was not prior art to be material to enablement issue).<
> The term "information" is intended to be all encompassing, similar to the scope of the term as discussed with respect to 37 CFR 1.291(a) (see MPEP § 1901.02). 37 CFR 1.56(a) also states: "The Office encourages applicants to carefully examine: (1) prior art cited in search reports of a foreign patent office in a counterpart application, and (2) the closest information over which individuals

1  associated with the filing or prosecution of a patent application believe any
2  pending claim patentably defines, to make sure that any material information contained therein is disclosed to the Office." The sentence does not create any
3  new duty for applicants, but is placed in the text of the rule as helpful guidance to individuals who file and prosecute patent applications.

4        18. MPEP § 2001.05, page 2000-4 further defines material information which
5  is required by 37 CFR § 1.56. This section states:

6      Under the rule, **information is not material unless it comes within the definition of 37 CFR 1.56(b)(1) or (2).** If information is not material, there is no
7  duty to disclose the information to the Office. Thus, it is theoretically possible for applicants to draft claims and a specification to avoid a *prima facie* case of
8  obviousness over a reference and then to be able to withhold the reference from the examiner. The Office believes that most applicants will wish to submit the
9  information, however, even though they may not be required to do so, to strengthen the patent and avoid the risks of an incorrect judgment on their part on
10  materiality or that it may be held that there was an intent to deceive the Office. [Emphasis added.]
11
12  Therefore, the existence of litigation does not appear to be information which is material to the
13  examination of an application within the meaning of 37 CFR § 1.56(b).

14        19. I note that MPEP § 2001.06(c) concerns information from related litigation.
15  In particular, MPEP § 2001.06(c) states as follows:

16      Where the subject matter for which a patent is being sought is or has been involved in litigation, the existence of such litigation and any other material
17  information arising therefrom must be brought to the attention of the U.S. Patent and Trademark Office. Examples of such material information include evidence
18  of possible prior public use or sales, questions of inventorship, prior art, allegations of "fraud," "inequitable conduct," and "violation of duty of
19  disclosure." Another example of such material information is any assertion that is made during litigation which is contradictory to assertions made to the examiner.
20  *Environ Prods., Inc. v. Total Containment, Inc.*, 43 USPQ2d 1288, 1291 (E.D. Pa. 1997). Such information might arise during litigation in, for example, pleadings,
21  admissions, discovery including interrogatories, depositions, and other documents and testimony. [Emphasis added.]

22        20. Mr. Carmichael does not contend that the applicants, through their attorney,
23  failed to disclose material information arising from the litigation, e.g., prior art, or that
24  applicants, through their attorney, took a position in the litigation which is contrary to the
25  assertions made to the examiner. Nor does Mr. Carmichael contend that the PTO was not
26

7       Case No. CV 01-3202 CRB (MEJ)
DECLARATION OF MICHAEL SOFOCLEOUS IN SUPPORT OF ICU MEDICAL, INC.'S REPLY FOR SUMMARY JUDGMENT ON B. BRAUN MEDICAL, INC.'S INEQUITABLE CONDUCT DEFENSE

PA/52150817.1

1   notified of the existence of such litigation.

2       21.    Rather, on page 14, lines 22 to 26 of his report, Mr. Carmichael opines that
3   applicant, through his attorney, failed to disclose that litigation to the examiner. As I noted
4   above, the only duty that applicant had was to disclose that litigation to the PTO and applicant
5   complied with that duty, since the court notified the PTO of the litigation. Applicants need
6   have done no more in this case.

7       22.    Further, on page 14, lines 25 to 28 of his report, Mr. Carmichael opines that
8   applicant should have disclosed "materials concerning that litigation, including the defenses
9   Braun has raised in that case as to the invalidity, unclean hands and patent misuse of the related
10  '204 patent." On page 16, line 27 to page 17, line 2, Mr. Carmichael opines that applicant
11  should have provided the examiner with "copies of relevant pleadings or other documents
12  [those on claim construction, infringement]." I disagree. It is well settled that the PTO must
13  interpret claims as broadly as their terms reasonably allow and should not interpret claims in
14  light of specification, prosecution history, prior art and other claims, as done in infringement or
15  validity before courts. See <u>In re Zletz</u>, 893 F.2d 319 (Fed. Cir. 1989).

16      23.    I further note that Mr. Carmichael states that in his experience people don't
17  consider the MPEP 2001.06 duty met by having the Court notify the PTO of litigation. I don't
18  understand Mr. Carmichael's position. I further note that under special circumstances more is
19  required than a mere notification. For example, further information is required of a reissue
20  applicant. In this regard, MPEP § 2001.06(c) specifically states:

21  > Where a patent for which reissue is being sought is, or has been, involved
22  > in litigation which raised a question material to examination of the reissue
    > application, such as the validity of the patent, or any allegation of "fraud,"
23  > "inequitable conduct," or "violation of duty of disclosure," the existence of such
    > litigation must be brought to the attention of the Office by the applicant at the
24  > time of, or shortly after, filing the application, either in the reissue oath or
    > declaration, or in a separate paper, preferably accompanying the application, as
25  > filed."

26

8     Case No. CV 01-3202 CRB (MEJ)
DECLARATION OF MICHAEL SOFOCLEOUS IN SUPPORT OF ICU MEDICAL, INC.'S REPLY FOR
SUMMARY JUDGMENT ON B. BRAUN MEDICAL, INC.'S INEQUITABLE CONDUCT DEFENSE

PA/52150817.1

1  In the present situation, application Serial No. 10/163,403, which issued as the '673 patent, was
2  not an application for reissue. For that reason, this particular section of the MPEP is not
3  relevant.
4        I declare under the penalty of perjury that the foregoing is true and correct and
5  that this declaration was executed this 28th day of January 2005 in Fairfax, Virginia.

8                                          /s/
9                                   Michael Sofocleous